Dear Mr. Dean:
You requested the opinion of this office concerning Recreation District 22 (the "District") which was created in 1964. You advised that in 1992 there was an election to levy a 3.27 mills tax for ten years, beginning with the year 1994, for the purpose of equipping, maintaining, and operating the recreation facilities of the District. You further advised that persons located outside the geographical boundaries of the District were allowed to vote on the tax. Your questions are as follows:
 1. Are the people, not included in the description of the district but who had the opportunity to vote on the tax, obligated to pay the tax?
 2. Recreation District 22 borrowed money based on the value of property included in the district as the proposition voted on described. What does this do to their millage rate if you do not collect on the total value as voted?
In answer to your first question, only those persons who are qualified electors of the district were eligible to vote on the tax (La. R.S. 33:4566); however, any suit to contest the election would have had to been brought within sixty days after promulgation of the election. After the sixty day period expires no one shall have any cause or right of action to contest the regularity, formality, or legality of the election for any cause whatsoever. La. Const. Art. VI, Sec. 35(A).
Only those properties located in the District's boundaries are subject to the tax. A political subdivision cannot levy a tax outside of its geographical boundaries. Atty.Gen.Op. 82-535;Constantin Refining Co. v. Day, 147 La. 623,85 So. 613 (1920).
In response to your second question, the election authorized the levy of 3.27 mills, no more and no less. Except for adjustments pursuant to La. Const. Art. VII, Sec. 23, the amount of the millage will not change even though the District's boundaries are reduced and even though the millage is the security for an obligation of the District.
It should be noted that the District borrowed pursuant to La. R.S. 39:742.2, which allows political subdivisions to anticipate the revenues to be realized from special ad valorem taxes by borrowing money secured thereby. The statute further provides that the principal and interest due in any year on the amount so borrowed in anticipation of the revenues to be received from the special ad valorem tax shall not exceed seventy-five percent of the revenues estimated to be realized from the levy of the special tax. Because the entirety of the anticipated revenues is not used in calculating the amount which may be borrowed, there may be sufficient revenues received from the tax for the District to pay the debt in its entirety.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH/
DATE RECEIVED: 5/28/96 DATE RELEASED: June 18, 1996
MARTHA S. HESS, ASSISTANT ATTORNEY GENERAL